UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11356-RGS

AVNER ARAZI,

v.

SAXON MORTGAGE SERVICES, INC.,

MEMORANDUM AND ORDER ON DEFENDANT
SAXON MORTGAGE SERVICES, INC.'S MOTION TO DISMISS

November 14, 2011

STEARNS, D.J.

This lawsuit arises out of plaintiff Avner Arazi's grant of a mortgage to Taylor, Bean & Whitaker Mortgage Corporation (TBW) on Unit 159, at 52 Charlesgate East, Boston, Massachusetts (Property) to secure a promissory note in the amount of $247,500.00.[1] On January 25, 2010, Mortgage Electronic Registration Systems (MERS) assigned Arazi's mortgage to defendant Saxon Mortgage Services, Inc. (Saxon) as the nominee for TBW.

On April 13, 2011, Arazi's counsel sent a qualified written request (QWR) to

---

[1] On the same day, August 6, 2006, Arazi signed a second mortgage with TBW in the amount of $49,500.00.

Saxon pursuant to Section 6 of RESPA.[2] *See* Complaint ¶¶ 12-13, Ex. A. The alleged "QWR requested all documents relative to the foreclosure of the Property, including, but not limited to, the transfer documents, the original mortgage, any payoffs, the note, who holds the mortgage and the note and an entire timeline of the mortgage." *Id.* ¶ 14. Saxon has not provided any documents in response to the QWR or proof that it is the holder of the original Mortgage or Note. Arazi alleges that Saxon's failure to respond to his QWR is a breach of the covenant of good faith and fair dealing implicit in the mortgage contract (Count I); a violation of Mass. Gen. Laws ch. 93A (Count II); and a forfeiture of any right that Saxon may possess to foreclosure on the Property (Count III).

Saxon moves to dismiss the Complaint arguing that there can be no breach of the covenant of good faith and fair dealing where the lack of a response to Arazi's request is not alleged to have resulted in a loss of a benefit under the mortgage contract. Second, Saxon notes that Arazi failed to serve a written demand letter on Saxon – a prerequisite for the filing of a claim under section 9 of Chapter 93A. Saxon finally points out that Count III is a prayer for injunctive relief and is not a freestanding cause

---

[2] "RESPA" refers to the Real Estate Settlement Procedure Act, 12 U.S.C. § 2601 et seq. The Mortgage states that the "Lender" shall comply with RESPA as it relates to funds for escrow items and changes of loan servicers. Ex. A ¶¶ 5 and 20. *See also* 12 U.S.C. § 2605(e)(1)(B).

2

of action. In any event, Saxon disagrees that it must show ownership of the original Mortgage and Note in order to undertake a foreclosure on the Property.

DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545 (internal citations omitted). *See also Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (dismissal for failure to state a claim is appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory"), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010), citing *Twombly*, 550 U.S. at 555. In considering the motion to dismiss, the court "takes all factual allegations [in the complaint] as true" and "draws all reasonable inferences" in Arazi's favor. *Rodriguez-Ortiz v. Margo Caribe, Inc.*,

3

490 F.3d 92, 96 (1st Cir. 2007).

*Count I*

Arazi claims that Saxon violated the covenant of good faith and fair dealing implicit in the mortgage by allegedly failing to respond to his QWR. *See* Complaint ¶¶ 18-20. Under the covenant, "'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-472 (1991), *quoting Uproar Co. v. Nat'l Broad. Co.*, 81 F.2d 373, 377 (1st Cir. 1936). The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the parties' contractual relationship, as the purpose of the covenant is to guarantee that the parties' performance remains faithful to the spirit of the underlying contract, and not some other agreement. *See Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

Arazi bases his claim for breach of the covenant on the mortgage contract. Compl. ¶ 19 ("The Mortgage is a contract."). However, the rights that Arazi invokes are not implicit in the contract, but are statutory rights created by reference to RESPA. *See* 12 U.S.C. § 2605. Under RESPA, a mortgage loan servicer must acknowledge receipt of a borrower's QWR within twenty days, and then has 60 days to either make appropriate corrections to the borrower's account or provide a written explanation why

4

the servicer believes the account is correct. *See* 12 U.S.C. § 2605(e). If the servicer fails to comply with either provision, a borrower may recover any "actual damages" caused by the failure. 12 U.S.C. § 2605(f). "In order to plead 'actual damages' sufficiently, the plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages." *See Okoye v. Bank of New York Mellon*, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011).

Saxon argues (rightly so) that as the mortgage holder, it has no obligations under RESPA. It points out that nowhere in the Complaint has Arazi made claims against it as a loan servicer. Nor has Arazi cited any benefit of the mortgage contract that he lost because of Saxon's alleged failure to respond to the QWR. For both of these reasons, the covenant of good faith and fair dealing has no application.

### *Count II*

Arazi also alleges a cause of action under the state Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 9, contending that "the actions of Saxon constitute unfair and deceptive practices." Complaint ¶¶ 26-27. To recover under Chapter 93A, § 9, a plaintiff must establish that: (1) the defendant committed an unfair or deceptive act or practice; (2) injury or loss; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive act or practice. *See Herman v. Admit One Ticket Agency LLC*, 454 Mass. 611, 615-616 (2009).

It is undisputed that Arazi did not serve Saxon with a demand letter before filing suit. The demand letter is a prerequisite to suit, *Lingis v. Waisbren*, 75 Mass. App. Ct. 464, 468 (2009), and must describe the underlying facts with reasonable specificity. *Piccuirro v. Gaitenby*, 20 Mass. App. Ct. 286, 292 (1985). *Cf. Bressel v. Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993) (there is no right to relief for an act not recited in the § 9 demand letter). Arazi, for his part, contends that no demand letter was required as Saxon does not maintain a place of business in Massachusetts, nor does it own any Massachusetts-based assets. *See* Mass. Gen Laws ch. 93A, § 9(3).

This latter assertion is simply not true. Arazi's Complaint alleges that Saxon holds the mortgage on the disputed Property at 52 Charlegate East. Under Massachusetts law, a mortgage vests legal title in its holder. "Literally, in Massachusetts, the granting of a mortgage vests title in the mortgagee to the land placed as security for the underlying debt. The mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains." *Maglione v. BancBoston Mortg. Corp.*, 29 Mass. App. Ct. 88, 90 (1990). Thus, "[a] recorded mortgage secured by real property located in the Commonwealth is an 'asset[ ] within the commonwealth' for purposes of Chapter 93A." *See Okoye,* 2011 WL 3269686, at *4 (D. Mass. July 28, 2011), quoting *In re Anderson,* 2006 WL 2786974, at *1 (Bankr. D. Mass. Sept. 26, 2006). Because of

6

Arazi's failure to make a written demand, his Chapter 93A claim fails as well.

*Count III*

With respect to Arazi's prayer for injunctive relief, Saxon asserts that it is not required to show that it is the holder of the underlying Note because Massachusetts vests a right to foreclose in the "mortgagee or person having his estate in the land mortgaged." Mass. Gen. Laws ch. 244, § 14. Saxon is correct. *See McKenna v. Wells Fargo Bank, N.A.*, 2011 WL 1100160, at *2 ("Under Massachusetts law, the current record mortgagee and holder of the mortgage is the proper party to foreclose upon a property. The Massachusetts statute governing foreclosures makes no mention of note holders.") (footnotes omitted) (Tauro, J.); *Valerio v. U.S. Bank, N.A.*, 716 F. Supp. 2d 124, 128 (D. Mass. 2010) (Gorton, J.) ("The Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders.").

ORDER

For the foregoing reasons, Saxon's motion to dismiss Counts I, II, and III is ALLOWED. The Clerk will enter an Order of Dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE